UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROBERT LOUIS MIRANDA,                    No. 2:06-cv-00333-MCE-CHS

    Petitioner,

  v.                                     MEMORANDUM AND ORDER

THOMAS L. CAREY,

    Respondent.

----oo0oo----

Robert Louis Miranda ("Petitioner") is incarcerated for second-degree murder. Proceeding in pro se, he now seeks a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. That Writ challenges Governor Arnold Schwarzenegger's reversal of the 2005 decision by the California Board of Prison Terms ("Board") granting Petitioner parole. Petitioner alleges that the Governor's reversal of the Board's decision violated his right to due process.[1]

///

---

[1] In addition, Petitioner argues that the Governor lacked the authority to review his parole grant under California Proposition 89, which is a state law argument. A federal writ is not available for alleged error in the interpretation of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Therefore, Petitioner's Prop. 89 argument will not be addressed.

1

Specifically, he claims that the Governor's reversal of the Board's suitability findings were based on frozen factors/elements and were made without "some evidence" in the record to support his decision.

In the underlying state court proceedings, the San Francisco County Superior Court denied the Petitioner's Writ finding that "some evidence" existed to support the Governor's 2005 reversal. That decision was upheld by the Third Appellate District. Petitioner subsequently filed a habeas petition with the California Supreme Court but the petition was rejected as untimely filed.

After Petitioner filed the instant petition with this Court, the assigned Magistrate Judge issued Findings and Recommendations granting Petitioner's claims. Since that time, new Ninth Circuit jurisprudence has altered the underlying law and, as a consequence, this Court must look again at the entire factual record as well as applicable case law. Having reviewed the matter de novo, this Court will grant Petitioner's 2005 habeas petition.

**FACTUAL BACKGROUND**

On November 1, 1981, David Larsen, a 32-year-old merchant seaman, was found dead on a sidewalk in San Francisco. He had been stabbed several times.

///
///
///

While there are two versions of the facts of the crime,[2] Petitioner contended during his parole board hearing that testimony given by Green at the preliminary hearing, and upon which his plea bargain was negotiated, is correct. Green testified that Petitioner called him from a bar on the night of the stabbing, saying the victim wanted to buy marijuana. Green drove to the bar, picked up Petitioner and the victim, drove to Seneca and Mission Streets, and parked the car. Green stated that the victim and Petitioner got out of the car, but only Petitioner returned a few minutes later, saying "Let's go!" Green, noticing blood on Petitioner's hands asked him what happened. Petitioner told him, "Don't ask; you don't know nothing."

According to Petitioner's statement to the Board, after the victim attempted to back out of the drug buy, an argument ensued. The argument escalated when Petitioner grabbed the victim's arm to keep him from leaving. The victim swung his duffel bag at Petitioner and Petitioner stabbed the victim. Petitioner stated that he was high and under the influence of alcohol at the time.

Green testified that he and Petitioner thereafter proceeded by car to Green's parents' home where Petitioner washed up and changed clothes. According to Green, they then drove to Diana Zelms' house.

///

---

[2] Petitioner's sister, Diana Zelms, reported to police that Miranda and Cliff Green, his accomplice in this crime, followed the victim out of a bar after observing the victim with a large amount of money. They proceeded to follow the victim until Petitioner exited the vehicle, stabbed the victim in the neck several times and stole the victim's wallet.

3

Green believed Petitioner was under the influence of PCP at the time of the crime because his eyes were glassy and because of his odd behavior.  Green claims that neither he nor Petitioner learned of the victim's death until the following evening.

### PROCEDURAL BACKGROUND

In 1985, Petitioner pled guilty to second-degree murder and received a sentence of 16 years to life.

In April of 2005, the Board found Petitioner suitable for parole.  In September of 2005, Governor Schwarzenegger reversed the Board's decision.  In November of 2005, Petitioner filed a Petition for Writ of Habeas Corpus in Superior Court for the City and County of San Francisco, challenging the Governor's reversal.

On January 9, 2006, the Superior Court, in a reasoned decision, denied the petition, holding that the Governor's decision was supported by "some evidence relevant to the factors the Governor is required to consider under article V, section 8(b) of the California Constitution."  The court also held that the Governor has given "individualized consideration" to the "specified criteria."  Petitioner then filed a petition with the California Court of Appeal on January 31, 2006, which was summarily denied on March 14, 2006.

///
///
///
///
///

Petitioner attempted to file a petition in the California Supreme Court, but that petition was erroneously rejected as untimely by the clerk (because he failed to give Petitioner the benefit of the so-called "mailbox rule").[3]  Petitioner filed the instant federal habeas corpus petition on March 14, 2006.

In Findings and Recommendations ("F&Rs") dated July 28, 2009, the assigned Magistrate Judge recommended that 1) Petitioner's application for a writ of habeas corpus be granted; 2) that Respondent Thomas L. Carey, Warden of the California State Prison, Solano (hereinafter "Respondent") be directed to release Petitioner from custody within 10 days of any order adopting the F&Rs, with Petitioner subject to the terms and conditions set by the Board; and 3) that Respondent be directed to file, within 10 days of Petitioner's release, a notice with the court confirming the date on which Petitioner was released.

On August 5, 2009, Respondent filed objections to the Magistrate Judge's F&Rs.  On August 11, 2009, Petitioner filed a reply to Respondent's objections.  On August 19, 2009, this Court issued an administrative stay order pending the Ninth Circuit's *en banc* review in Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008).  The Hayward *en banc* decision was filed on April 22, 2010.  Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010).  The Hayward decision and its progeny provide new guidance to district courts in evaluating a state prisoner habeas corpus petition.

---

[3] "Incarcerated *pro se* litigants, since they cannot avail themselves of the freedom of other litigants, may 'file' a notice of appeal simply by delivering it to prison authorities for mailing, rather than by actually filing it with the clerk of court as is generally required." Houston v. Lack, 487 U.S. 266 (1988).

5

**DISCUSSION**

**A.   Habeas Corpus Standard**

Congress enacted the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") on April 24, 1996.  AEDPA's standards apply to all subsequently filed petitions for a writ of habeas corpus.  Petitioner filed his initial Petition on November 10, 2005, after the effective date of the AEDPA.  The Petition must therefore be analyzed under the provisions of the AEDPA, and may be granted only if Petitioner demonstrates that the state court decision "was either (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) (quoting Doody v. Schriro, 596 F.3d 620, 634 (9th Cir. 2010) (en banc) (citation omitted).  Petitioner bears the burden of establishing that the state court's decision is "contrary to" or was an "unreasonable application" of federal law. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).

In determining what is clearly established Federal law, courts must look to Supreme Court holdings, as opposed to mere dicta, in place at the time of the relevant state court decisions. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Courts must then decide whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Id. at 72.

Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).

Under the "unreasonable application" clause, a federal court may grant the writ of habeas corpus if the state court identifies the correct governing legal doctrine from the Supreme Court's decisions but applies that principle unreasonably to the facts of the prisoner's case." Williams, 529 U.S. at 413. The state court's application of clearly established federal law must be erroneous or incorrect in addition to being unreasonable. Id. at 411. In conducting such an analysis, the court must evaluate whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. It must "look through" the summary California Court of Appeal decision to the last reasoned opinion, the Superior Court decision, in order to reach its decision. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 (1991). Although, as dictated by 12 U.S.C. § 2254(d)(1), only Supreme Court law is binding on the states, federal appellate court precedent is relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Kessee v. Mendoza-Powers, 574 F.3d 675, 678 (9th Cir. 2009) (internal citations omitted).

///
///
///

**B.     Due Process Claims**

A due process claim requires two analytical steps. The first is whether a protected liberty interest exists; the second is whether the procedures attendant upon that deprivation were constitutionally sufficient. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006). As recognized by the Supreme Court in Jago v. Van Curen, 454 U.S. 14, 17-21 (1981), a parole date is not a protected liberty interest defined by the federal Constitution itself. The Ninth Circuit Court of Appeals, however, has found that "state-created rights may give rise to liberty interests that may be enforced as a matter of federal law." Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing Wilkinson v. Austin, 545 U.S. 209 (2005)); see also Cooke v. Solis, 606 F.3d 1206 (9th Cir. 2010). The Ninth Circuit further held in its *en banc* Hayward decision that if there is a "right to release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010). The Court concluded that California's parole scheme gives rise to such a right, and that a prisoner is entitled to release in the absence of "some evidence" of current dangerousness. See Pearson, 606 F.3d at 611.

///
///
///
///

Having established that such a liberty interest exists in the California parole scheme, a federal habeas petition brought by a California prisoner is reviewed on two grounds: (1) whether the California judicial decision approving the Governor's or parole board's decision rejecting parole was an unreasonable application of the California "some evidence" requirement; or (2) whether the decision was based on an unreasonable determination of the facts in light of the evidence standard. See Hayward, 603 F.3d at 563.  While parole denial must be supported by "some evidence," review of the Governor's reversal decision is "extremely deferential."  In re Rosencrantz, 29 Cal.4th 616, 665 (2002).

**C.   Analysis**

As a threshold matter, the California Court of Appeal and Supreme Court did not reach the merits of Petitioner's claims. Consequently, with regards to the 2005 reversal, this Court reviews the decision of the San Francisco County Superior Court because it is the only state judicial order setting forth reasons for denying habeas corpus relief to Petitioner.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004); see also Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (holding that where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground).

///
///

The California Supreme Court has held that "some evidence" is required by the state regulatory, statutory, and constitutional provisions that govern parole decisions in California. Cooke, 606 F.3d at 1214 (citing In re Rosenkrantz, 29 Cal. 4th 616 (2002)). Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole" [citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety" in light of the full record available to the Board or Governor. Id. (quoting In re Lawrence, 22 Cal. 4th 1182 (2008). A reviewing court must inquire "whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety." See Hayward, 603 F.3d at 562.

The California Supreme Court has provided extensive guidance for application of the "some evidence" rule. In Lawrence, supra, the Court held that the Board may consider the circumstances of the commitment offense when making a parole decision, but the nature of the crime does not by itself provide for some evidence of an individual's current dangerousness to the public. An aggravated offense does not, in every case, establish that the inmate is a current threat to public safety. Hayward, 603 F.3d at 562; Cooke, 606 F.3d at 1214.

///
///
///

10

The record must also establish that the prisoner's pre- or post-incarceration history or his current demeanor and mental state indicate that the "implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Cooke, 606 F.3d at 1214.

The Ninth Circuit has looked to the California parole regulations which identify circumstances that indicate unsuitability for release. Those circumstances include the aggravated nature of the commitment offense, an unstable social history, a history of severe mental problems related to the offense, and serious misconduct in jail. Pirtle v. California Board of Prison Terms, 2010 WL 2732888 (9th Cir. 2010) (citing Cal. Code Regs., tit. 15, § 2402(c)). Circumstances showing suitability for parole include the lack of a juvenile record, a stable social history; signs of remorse, significant stress as a motivation for the crime, lack of a criminal history, realistic plans for the future, and good institutional behavior. Id. (citing Cal. Code Regs., tit. 15 § 2402(d)). The Ninth Circuit directed district courts confronted with the application of the "some evidence" rule to decide "whether the California judicial decision approving the Governor's decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 563.
///
///

11

The "some evidence" standard is extremely deferential and any conflict of evidence, or weight given to the evidence, is within the authority of the Board or Governor and requires only a "modicum of evidence" of unsuitability for parole. In re Lazor, 172 Cal. App. 4th 1185, 1198 (2009) (quoting Lawrence, 44 Cal. 4th at 1191, n. 2). A federal habeas court may not substitute its own judgment for the Board's merely because it would weigh the evidence differently. Id. at 1199 (quoting Rosenkrantz, 29 Cal. 4th at 677). Therefore, this Court must determine whether the evidence cited by the Governor and the Board of Prison Terms conforms with the "some evidence" requirements that Petitioner is a current threat to public safety.

**1. State Judicial Review of Governor's 2005 Reversal**

Following a review of the Superior Court's decision and application of relevant case law, this Court concludes that the Governor's 2005 reversal of the Parole Board's decision does not satisfy the "some evidence" standard. The Superior Court noted that in his decision to reverse the Board's 2005 decision to grant Petitioner parole, the Governor states that "the gravity of this crime alone is sufficient...to conclude that his release from prison would pose an unreasonable risk to public safety." (Gov. Reversal pp. 3).

///
///
///
///

12

The Governor also states, however, that "after carefully considering the very same factors the Board must consider, I find that the gravity of the second-degree murder [Petitioner] committed presently outweighs any factors supportive of his parole." (Id.)  The factors he discussed in that regard are: (1) Petitioner's criminal history; (2) his history of drug use; and (3) circumstances of the commitment offense.  (Id. at 1-3) The San Francisco County Superior Court denied Petitioner relief concluding that there was "some evidence" supporting the Governor's decision. (Sup. Ct. Dec'n pp. 2).  The Superior Court cited the same factors that the Governor referenced indicating unsuitability.

**2.   District Court Inquiry into Decisions by the Governor and the Superior Court**

This Court must inquire whether the Governor's decision to reverse the Board and the subsequent Superior Court decision are supported by "some evidence" as it is defined by the California Supreme Court and interpreted by the Ninth Circuit Court of Appeals.  Moreover, a reviewing court must also consider whether the facts identified by the state entities are "probative" to the central issue of "current dangerousness."  Cooke, 606 F.3d at 1214.

As to the Governor's contention that "the gravity of this crime alone is sufficient...to conclude that his release from prison would pose an unreasonable risk to public safety," the Ninth Circuit has noted as recently as July 2010 that the California Supreme Court expressly rejects that contention.

13

Pirtle, 2010 WL 2732888 at 5 (9th Cir. 2010) (citing Lawrence, 82 Cal. Rptr. 3d 169) ("the aggravated circumstances of a commitment offense [do not] inherently establish current dangerousness..."). This conclusion is well-settled law in this circuit and any decision the Governor may have made based on this contention is an unreasonable application of the California "some evidence" requirements.  See also Hayward, 603 F.3d at 562; Cooke, 606 F.3d at 1214.

Turning to the other factors the Superior Court noted as being discussed by the Governor in his reversal letter, Petitioner's criminal history appears to bear no relation to risk of current dangerousness.  Petitioner's convictions other than the commitment offense include the following infractions:  minor in possession of alcohol, misdemeanor battery in 1976, giving false information to police and receiving stolen property.  Petitioner was arrested but not convicted of several petty, non-dangerous crimes as well as one arrest for assault with a deadly weapon.  None of Petitioner's adult criminal history involved crimes that were either felonious or involved significant violence.  (Answer, Ex. B at 7)

Furthermore, as of the 2005 Board hearing, 22 years had passed since Petitioner's most recent prior conviction.  The parole regulations consider a lack of "any significant history of violent crime" as an indicator of suitability for parole, so to find Petitioner's criminal history to be an indicator of unsuitability for parole results is an unreasonable determination of the facts in light of the evidence.  Cooke, 606 F.3d at 1213.
///

Turning next to Petitioner's history of drug abuse, the Petitioner stated to the Board that he had been drug-free and sober since 1990 and there is no evidence to refute that assertion. The Governor and the Board have acknowledged Petitioner's abstention from drugs and alcohol in their decisions. Petitioner has engaged in Narcotics Anonymous and Alcoholics Anonymous. (Petition at 140). A psychiatrist reporting to the 2005 Board stated that Petitioner "needs and will continue to need program support for [his] addiction...[but] his present risk to the community is low."[4] In a recent Ninth Circuit case, the court found that where a prisoner has been discipline-free for nearly a decade, the record did not provide evidence of current dangerousness. Cooke, 606 F.3d at 1215. Therefore, any relation between Petitioner's prior drug use and his current dangerousness appears to have no evidentiary support.

The final factor noted by the Governor in reversing the Board's decision is the nature of the commitment offense itself. Petitioner admits to stabbing the victim in the neck several times and then stealing his wallet. The Governor noted that Petitioner had the opportunity to stop stabbing the victim, but did not do so. The Governor also noted that Petitioner committed the murder under the influence of PCP and alcohol.

///

---

[4] The Board ordered as special conditions of Petitioner's parole that he: 1) not use alcoholic beverages, 2) submit to alcohol testing, 3) submit to anit-narcotic testing, 4) submit to THC testing, 5) participate in a substance abuse program, such as AA or NA, 6) attend Parole Outpatient Clinic, and 7) parole to the Modesto Gospel Mission, a 13-month residential recovery facility. Petition at 124, 145.

15

The Governor states, but Petitioner refutes, that Petitioner told two versions of the crime. Petitioner's sister reported to police that Petitioner confessed to targeting the victim for robbery while they were in the bar. Petitioner himself, on the other hand, states that it was a crime of impulse, brought on by the fact that he was high on PCP and alcohol and that the victim tried to back out of the contemplated drug purchase. Cliff Green, Petitioner's convicted accomplice, corroborated Petitioner's version of the facts while under oath at the preliminary hearing. Green also stated he believed Petitioner was high at the time of the crime. As noted above, while there is no doubt that Petitioner committed a heinous crime, these circumstances cannot form the sole basis for the denial of parole.

Turning now to the factors considered by the Governor and the Superior Court that favor suitability for parole, many exist. First, the Governor acknowledges that Petitioner

> "...has worked during his incarceration to enhance his ability to function within the law upon release. He has upgraded educationally and vocationally by earning his GED, becoming certified as an optician, and completing vocational training in silk screening. He has held several skilled institutional jobs, including as a plumber, and has participated in wide array of self-help and therapy, including Creative Conflict Resolutions, Stress Management, Men's Violence Prevention, PLATO classes, Victims/Offenders Learning Together, and Breaking Barriers. He has participated in extracurricular activities including Men's Advisory Council and several religious activities, and has made seemingly solid efforts to address his history of substance-abuse by participating in Alcoholics Anonymous, Narcotics Anonymous, Framework for Recovery, and a religious 12-step program.

///

16

> Furthermore, [Petitioner] has received favorable evaluations in recent years from correctional and mental-health professionals, including assessments that his risk to the community probably would be low if released. He has also maintained supportive relationships with family and friends, and one member of the victim's family has recently voiced support for his parole."

(Gov's Reversal Ltr. pp. 1-2).

In addition, the Board noted in its report granting parole that Petitioner has done an "excellent job" (Am. Pet. pp. 85) [rehabilitating in prison to warrant parole]. It noted that Petitioner "has the factors that are very important in considering parole and there was no opposition from law enforcement or the District Attorney." (Id.) The Board also acknowledged that Petitioner has worked very hard to earn parole. (Id.) Finally, the Board recognized that Petitioner has shown signs of remorse and currently has realistic parole plans. (Id. at 80)

This Court concludes that the two factors apart from circumstances of the commitment offense, as considered by the Governor and the Superior Court (namely, Petitioner's criminal history and his history of drug abuse) provide no evidentiary support for parole denial. Therefore, after considering all the factors that favor suitability for parole this Court concludes that no evidence exists to support parole denial in this case.

Noting the deference to state courts, this Court does not substitute its own judgment as to the weight of the evidence for that of the state tribunals.

///

///

17

1  The Ninth Circuit has found that "disciplinary infractions
2  occurring a decade earlier [are] not evidence of current
3  dangerousness," Cooke v. Solis, 606 F.3d at 1215.  Here, there
4  are no major disciplinary infractions that concern the Board or
5  the Governor.
6     An apt analogy can be made between Petitioner here and an
7  inmate whose parole suitability was considered by the Ninth
8  Circuit in its recent Pirtle decision.  Pirtle v. California
9  Board of Prison Terms, 2010 WL 2732888 (9th Cir. 2010).  Ten
10 years after being sentenced to a term of seventeen years to life
11 in prison for second-degree murder, the Board determined Pirtle
12 was "suitable for parole and would not pose an unreasonable risk
13 of danger to society or a threat to public safety if released
14 from prison." Id.  As in this case, the Board found the
15 petitioner in Pirtle showed remorse and accepted responsibility
16 for the crime.  Pirtle, like Petitioner, had no adult convictions
17 for violent crimes, performed well in his prison jobs, matured
18 since the crime, was positively evaluated by prison psychiatrists
19 and had reasonable and realistic parole plans.  The Board granted
20 Pirtle parole, which the Ninth Circuit eventually affirmed in
21 light of Hayward, supra.  See Pirtle supra.
22    The Magistrate Judge in this case concluded that there was
23 insufficient evidence to support Petitioner's continued
24 incarceration, and cited the Report to the Board of Prison Terms
25 which found that the Petitioner's danger to the community is low
26 for the general male population.  (F&R at 25).  This Court agrees
27 with that assessment and finds Petitioner suitable for parole.
28 ///

18

**CONCLUSION**

The Governor's 2005 Reversal of the Parole Board's decision granting parole was an unreasonable application of the California "some evidence" standard because the Governor erroneously contended that the gravity of the crime alone was sufficient to deny the habeas petition. In addition, the decision was not based on a reasonable determination of the facts in light of the evidence because the unsuitability factors apart from the circumstances of the commitment offense provide no evidentiary support for the denial of parole. Petitioner's suitability factors provide reassurance of low risk of danger to the community upon release.

Therefore, Petitioner's habeas corpus petition (ECF No. 1) is GRANTED. Since federal courts have the latitude to resolve a habeas corpus petition "as law and justice require," (28 U.S.C. § 2243) this Court orders the prisoner's release as soon as administratively possible.

IT IS SO ORDERED.

Dated: October 13, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE